# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARLES AND MARY ANN STRANGE ON BEHALF OF
MICHAEL STRANGE, their son and stepson,*

and

DOUGLAS AND SHAUNE HAMBURGER ON BEHALF
OF PATRICK HAMBURGER, their son and stepson,*

and

PHOUTHASITH DOUANGDARA ON BEHALF OF
JOHN DOUANGDARA, his son,*

        Plaintiffs,

v.

THE ISLAMIC REPUBLIC OF IRAN,
Interest Section
2209 Wisconsin Avenue, N.W.
Washington, D.C. 20007

and

MAHMOUD AHMADINEJAD,
Former President of Iran
Tehran, Iran 13168-43311

and

AYATOLLAH SAYYID ALI HOSEYNI KHAMENEI,
The Supreme Leader of Iran
Interest Section
2209 Wisconsin Avenue, N.W.
Washington, D.C. 20007

and

ARMY OF THE GUARDIANS OF THE
ISLAMIC REVOLUTION,
Interest Section

2209 Wisconsin Avenue, N.W.
Washington, D.C. 20007

and

HAMID KARZAI,
c/o The Embassy of the Islamic Republic of Afghanistan
2233 Wisconsin Avenue N.W.
Suite 216
Washington, D.C. 20007

and

AFGHAN OPERATIONAL COORDINATION GROUP,

and

KHASA AMALYATI QETA/QETA-E-KHAS-E-
AMALYATI, the AFGHAN SPECIAL OPERATIONS UNIT,

and

AFGHAN NATIONAL SECURITY FORCES,

and

THE ISLAMIC REPUBLIC OF AFGHANISTAN,
c/o The Embassy of the Islamic Republic of Afghanistan
2233 Wisconsin Avenue N.W.
Suite 216
Washington, D.C. 20007

and

THE TALIBAN,
Kandahar, Afghanistan,

and

AL QAEDA, a/k/a ISLAMIC ARMY,
Afghanistan,

Defendants.

* Addresses not listed for security reasons.

## COMPLAINT

Plaintiffs, Charles and Mary Ann Strange, Douglas and Shaune Hamburger, and Phouthasith Douangdara, by counsel and on behalf of themselves and their sons and stepsons, ("decedents"), hereby sue the Islamic Republic of Iran ("Iran"), Mahmoud Ahmadinejad ("Ahmadinejad"), Ayatollah Sayyid Ali Hoseyni Khamenei ("Khamenei"), the Army of the Guardians of the Islamic Revolution, ("IRGC"), Hamid Karzai ("Karzai"), the Afghan Operational Coordination Group ("OCG"), Khasa Amalyati Qeta/Qeta-e-Khas-e-Amalyati or the Afghan Special Operations Unit ("ASOU"), the Afghan National Security Forces ("ANSF"), the Islamic Republic of Afghanistan ("Afghanistan"), the Taliban ("Taliban"), and Al Qaeda ("Al Qaeda"), these individuals and foreign states in their official and unofficial capacities, for violating Plaintiffs' and decedents' rights, for engaging in racketeering and other prohibited activities, for engaging in international terrorism, for harboring and concealing terrorists, for providing material support to terrorists and terrorist groups, for directly and proximately causing the deaths of Plaintiffs' decedents, and for directly and proximately causing mental anguish, severe emotional distress, emotional pain and suffering, and the loss of society, earnings, companionship, comfort, protection, care, attention, advice, counsel or guidance, Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, have experienced and will experience in the future. As grounds therefore, Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, allege as follows:

## INTRODUCTION

1.  This is an action for violations of 18 U.S.C. §§ 2333, 2339 and 2339A. (Terrorism related activities).

2.  This is an action for violations of 18 U.S.C. § 1961 *et seq*. (Racketeer Influenced And Corrupt Organizations Act).

3.  This is an action for assault and battery, intentional infliction of emotional distress, wrongful death, negligence and gross negligence.

## JURISDICTION AND VENUE

4.  For Defendant Iran, this Court has personal jurisdiction and subject matter jurisdiction pursuant to 18 U.S.C. § 2331 *et seq*.; 28 U.S.C. § 1330(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1332; and 28 U.S.C. § 1605(a)(1) and 28 U.S.C. § 1605A. Venue is proper for Defendant Iran pursuant to 28 U.S.C. § 1391(f)(4).

5.  For Defendant Ahmadinejad, this Court has personal jurisdiction and subject matter jurisdiction pursuant to 18 U.S.C. § 2331 *et seq*.; 28 U.S.C. § 1330(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1332; and 28 U.S.C. § 1605(a)(1) and 28 U.S.C. § 1605A. Venue is proper for Defendant Ahmadinejad pursuant to 28 U.S.C. § 1391(d) and 28 U.S.C. § 1391(f)(4).

6.  For Defendant Khamenei, this Court has personal jurisdiction and subject matter jurisdiction pursuant to 18 U.S.C. § 2331 *et seq*.; 28 U.S.C. § 1330(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1332; and 28 U.S.C. § 1605(a)(1) and 28 U.S.C. § 1605A. Venue is proper for Defendant Khamenei pursuant to 28 U.S.C. § 1391(d) and 28 U.S.C. § 1391(f)(4).

7.  For Defendant IRGC, this Court has personal jurisdiction and subject matter jurisdiction pursuant to 18 U.S.C. § 2331 *et seq*.; and 28 U.S.C. § 1330(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1332; and 28 U.S.C. § 1605(a)(1) and 28 U.S.C. § 1605A. Venue is proper for Defendant IRGC pursuant to 28 U.S.C. § 1391(f)(4).

8.   For Defendant Karzai, this Court has personal jurisdiction and subject matter jurisdiction pursuant to 18 U.S.C. § 1961 *et seq.*, 18 U.S.C. § 2331 *et seq.*; and 28 U.S.C. § 1331 and 28 U.S.C. § 1332; and 28 U.S.C. § 1605(a)(1). Venue is proper for Defendant Karzai pursuant to 28 U.S.C. § 1391(d) and 28 U.S.C. § 1391(f)(4).

9.   For Defendant OCG, this Court has personal jurisdiction and subject matter jurisdiction pursuant to 18 U.S.C. § 1961 *et seq.*, 18 U.S.C. § 2331 *et seq.*; and 28 U.S.C. § 1330(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1332. Venue is proper for Defendant OCG pursuant to 28 U.S.C. § 1391(f)(4).

10. For Defendant ASOU, this Court has personal jurisdiction and subject matter jurisdiction pursuant to 18 U.S.C. § 1961 *et seq.*, 18 U.S.C. § 2331 *et seq.*; and 28 U.S.C. § 1330(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1332. Venue is proper for Defendant ASOU pursuant to 28 U.S.C. § 1391(f)(4).

11. For Defendant ANSF, this Court has personal jurisdiction and subject matter jurisdiction pursuant to 18 U.S.C. § 1961 *et seq.*, 18 U.S.C. § 2331 *et seq.*; and 28 U.S.C. § 1330(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1332. Venue is proper for Defendant ANSF pursuant to 28 U.S.C. § 1391(f)(4).

12. For Defendant Afghanistan, this Court has personal jurisdiction and subject matter jurisdiction pursuant to 18 U.S.C. § 2331 *et seq.*; 28 U.S.C. § 1330(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1332; and 28 U.S.C. § 1605(a)(1). Venue is proper for Defendant Afghanistan pursuant to 28 U.S.C. § 1391(f)(4).

13. For Defendant Taliban, this Court has personal jurisdiction and subject matter jurisdiction pursuant to 18 U.S.C. § 1961 *et seq.*, 18 U.S.C. § 2331 *et seq.*; and 28 U.S.C. § 1330(a),

28 U.S.C. § 1331 and 28 U.S.C. § 1332; and 28 U.S.C. § 1605(a)(1) and 28 U.S.C. § 1605A. Venue is proper for Defendant Taliban pursuant to 28 U.S.C. § 1391(f)(4).

14. For Defendant Al Qaeda, this Court has personal jurisdiction and subject matter jurisdiction pursuant to 18 U.S.C. § 1961 *et seq*., 18 U.S.C. § 2331 *et seq*; and 28 U.S.C. § 1330(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1332; and 28 U.S.C. § 1605(a)(1) and 28 U.S.C. § 1605A. Venue is proper for Defendant Al Qaeda pursuant to 28 U.S.C. § 1391(f)(4).

## STANDING

15. Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, have standing to bring this action because they have been directly affected and victimized by the unlawful conduct complained herein. Their injuries are proximately related to the illegal conduct of Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, each and every one of them, jointly and severally.

## THE PARTIES

16. Plaintiffs Charles and Mary Ann Strange are the father and stepmother of Michael Strange, a National Security Agency ("NSA") Cryptologist Technician and Petty Officer 1st Class (Expeditionary Warfare Specialist), support personnel for Navy SEAL Team VI who was killed when the helicopter he was in was intentionally and maliciously attacked and shot down by Defendant Taliban jihadists, acting in concert with the other Defendants, in [Defendant] Afghanistan on August 6, 2011.

17. Plaintiffs Doug and Shaune Hamburger are the father and stepmother of Patrick Hamburger, a Staff Sergeant assigned to the 2nd Battalion, 135th Aviation Regiment (General Support Aviation Battalion), member of the Army National Guard who was killed when the helicopter he was in was intentionally and maliciously attacked and shot down by Defendant Taliban jihadists, acting in concert with the other Defendants, in [Defendant] Afghanistan on August 6, 2011.

18. Plaintiff Phouthasith Douangdara is the father of John Douangdara, a Master-at-Arms Petty Officer 1st Class (Expeditionary Warfare Specialist), support personnel for Navy SEAL Team VI who was killed when the helicopter he was in was intentionally and maliciously attacked and shot down by Defendant Taliban jihadists, acting in concert with the other Defendants, in [Defendant] Afghanistan on August 6, 2011.

19. Defendant Iran was established on April 1, 1979, when the former leader, Shah Mohammad Reza Pahlavi, was overthrown in a coup d'état. Under the Supreme Leader Ayatollah Khomeini and then subsequently under the current Supreme Leader, Defendant Khamenei, Defendant Iran is an Islamic regime that has historically and continually used force, fear, torture, murder and other violations of human rights and crimes against humanity in order to prop up its autocratic regime and further an Islamic caliphate in the Middle East and worldwide. Iran seeks to ensure that the inhumane and barbaric Islamic laws of *Sharia* are imposed upon people as the will of Allah. Furthermore, Iran defies international law and jeopardizes peace by promoting, financing, participating in and furthering terrorism. The U.S. State Department declared Iran a State Sponsor of Terrorism in 1984. It is widely known and reported that Defendant Iran pays bounties based on the deaths of U.S. servicemen. Defendant Iran at all material times acted in its

unofficial or official capacity, particularly insofar as it engaged in concert with individuals such as Defendant Karzai and his agents in the Afghan government, the Afghan military, Afghan terrorists and Afghan terrorist groups in a criminal enterprise designed to enrich the country of [Defendant] Iran. Defendant Iran finances and provides other things of value to Defendant Karzai and his agents in the Afghan government, military, terrorists and terrorist groups in exchange for compromising the security and paying for the deaths of Plaintiffs' decedents and others similarly situated. Defendant Iran is therefore not precluded from suit by 18 U.S.C. § 2337(2) because it did not act in its official capacity or under color of legal authority for purposes of this count, since Iran and its government agents officially deny any terrorist support or activities. Defendant Iran is a foreign state whose activities, described herein, were outside the scope of immunity provided by the Foreign Sovereign Immunities Act ("FSIA"). Defendant Iran, by its activities herein, waived its immunity, either explicitly or by implication, pursuant to 28 U.S.C. § 1605(a)(1). Defendant Iran is also liable pursuant to 28 U.S.C. § 1605A.

20. Defendant Ahmadinejad was the President of Iran from 2005 to 2013. Prior to being "elected" as president, Defendant Ahmadinejad volunteered at the *Basiji* militia movement and has been actively engaged in rousing anti-American and anti-western sentiments and furthering terrorist acts in the Middle East and worldwide. It has been widely reported that Defendant Ahmadinejad participated in the infamous Iranian hostage crisis with regard to kidnapping U.S. Embassy personnel in Tehran, Iran. Defendant Ahmadinejad at all material times acted in his unofficial or official capacity insofar as he is personally engaged in concert with terrorists and terrorist groups in a criminal enterprise designed to enrich him personally. At all material times, Defendant

Ahmadinejad finances and provides other things of value to terrorists and terrorist groups in exchange for compromising the security and paying for the deaths of Plaintiffs' decedents and others similarly situated. Defendant Ahmadinejad is therefore not precluded from suit by 18 U.S.C. § 2337(2) because he did not act in his official capacity or under color of legal authority for purposes of this count, since Iran and its government agents officially deny any terrorist support or activities. Defendant Ahmadinejad is a foreign person whose activities, described herein, were outside the scope of immunity provided by FSIA. Defendant Ahmadinejad, by his activities herein, waived his immunity, either explicitly or by implication, pursuant to 28 U.S.C. § 1605(a)(1). Defendant Ahmadinejad is also liable pursuant to 28 U.S.C. § 1605A.

21. Defendant Khamenei is the highest-ranking leader in Iran and is commonly referred to as the "Supreme Leader". He has served in this capacity since 1989. Defendant Khamenei was the protégé of the mastermind of the 1970 revolutionary movement, Ayatollah Khomeini, who orchestrated and saw the overthrow of the Shah which led to the current terrorist Islamist state in present-day Iran. Khamenei controls the Iranian military, Defendant IRGC, and all of the other tools of insidious force and subjugation of people and others that enable him to keep his grip on power in Iran. Defendant Khamenei at all material acted in his unofficial or official capacity particularly insofar as he is personally engaged in concert with terrorists and terrorist groups in a criminal enterprise designed to enrich him personally. Defendant Khamenei finances and provides other things of value to terrorists and terrorist groups in exchange for compromising the security and paying for the deaths of Plaintiffs' decedents and others similarly situated. Defendant Khamenei is therefore not precluded from suit by 18 U.S.C. § 2337(2) because he did not act in his

official capacity or under color of legal authority for purposes of this count, since Iran
and its government agents officially deny any terrorist support or activities. Defendant
Khamenei is a foreign person whose activities, described herein, were outside the scope
of immunity provided by FSIA. Defendant Khamenei, by his activities herein, waived his
immunity, either explicitly or by implication, pursuant to 28 U.S.C. § 1605(a)(1).
Defendant Khamenei is also liable pursuant to 28 U.S.C. § 1605A.

22. Defendant IRGC is a military group supported and controlled by the Iranian government,
including Defendant Iran, Defendant Khamenei and Defendant Ahmadinejad. The IRGC
was established in 1979 after the Islamic Revolution, and since then has engaged in a
multitude of terrorist activities against foreign military and civilian targets, at the
direction of Defendant Khamenei and Defendant Ahmadinejad. Defendant IRGC was
branded a terrorist group by the U.S. State Department in 2001 and continues to promote
terrorist activities. The group is headquartered in Tehran, Iran and primarily launders
money for terrorist operations through Dubai. Defendant IRGC at all material times acted
in its unofficial or official capacity, particularly insofar as it engaged in concert with
terrorists and terrorist groups in a criminal enterprise designed to enrich its own group
and the country of [Defendant] Iran and also to carry out an Islamic caliphate against
U.S. and western interests. Defendant IRGC finances and provides other things of value
to terrorists and terrorist groups in exchange for compromising the security and paying
for the deaths of Plaintiffs' decedents and others similarly situated. Defendant IRGC is
therefore not precluded from suit by 18 U.S.C. § 2337(2) because it did not act in its
official capacity or under color of legal authority for purposes of this count, since Iran
and its government agents officially deny any terrorist support or activities. Defendant

IRGC is a foreign agency whose activities, described herein, were outside the scope of immunity provided by the FSIA. Defendant IRGC, by its activities herein, waived its immunity, either explicitly or by implication, pursuant to 28 U.S.C. § 1605(a)(1). Defendant IRGC is also liable pursuant to 28 U.S.C. § 1605A.

23. Defendant Karzai is the current President of Afghanistan. Defendant Karzai is known internationally as criminally corrupt and upon information and belief, compromised Navy SEAL Team VI's and other special operations servicemen's mission, Extortion 17, to pursue the Taliban leader, Qari Tahir, by selling the coordinates of the SEAL's location and/or other classified information to terrorist organizations, Defendant Taliban and Defendant Al Qaeda, for large sums of money, and engaged in other criminal acts set forth below. It was reported that U.S. servicemen accidentally shot and killed Karzai's second cousin. As discussed in detail below, it was also recently reported that Defendant Karzai engages in secret meetings with Defendant Taliban without the involvement of his American and Western allies. Defendant Karzai seeks to release hardened Taliban militants from prison and has done so. Defendant Karzai at all material acted in his unofficial or official capacity particularly insofar as he personally engaged in concert with terrorists and terrorist groups in a criminal enterprise designed to enrich him personally. Defendant Karzai solicits and accepts money and other things of value from terrorists and terrorist groups in exchange for compromising the security and planning for the deaths of Plaintiffs' decedents and others similarly situated. Defendant Karzai is therefore not precluded from suit by 18 U.S.C. § 2337(2) because he did not act in his official capacity or under color of legal authority for purposes of this count. Defendant

Karzai, by his activities herein, waived its immunity, either explicitly or by implication, pursuant to 28 U.S.C. § 1605(a)(1).

24. Defendant OCG is an Afghan entity manned by Afghan personnel from security and law enforcement agencies. Among its responsibilities, Defendant OCG conceives of, initiates, plans, reviews and approves special operations missions, participates in intelligence fusion, monitors mission execution, makes notifications to provincial Governors, and makes reports to senior Afghan command authorities. Based upon information and belief contained in the official crash report given to the Extortion 17 families after the deaths of their sons, Defendant OCG, a criminal enterprise at times, regularly compromises the security of U.S. soldiers' lives in exchange for financial benefits and gratuities from Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda. Defendant OCG at all material times acted in its unofficial or official capacity, particularly insofar as it engaged in concert with terrorists and terrorist groups in a criminal enterprise designed to enrich its own group and the country of [Defendant] Afghanistan. Defendant OCG solicits and accepts money and other things of value from terrorists and terrorist groups in exchange for compromising the security and planning the deaths of Plaintiffs' decedents and others similarly situated. Defendant OCG is therefore not precluded from suit by 18 U.S.C. § 2337(2) because it did not act in its official capacity or under color of legal authority for purposes of this count. Defendant OCG, by its activities herein, waived its immunity, either explicitly or by implication, pursuant to 28 U.S.C. § 1605(a)(1).

25. Defendant ASOU is comprised of the Afghan National Army, Afghan National Police, and National Directorate of Security personnel. Based upon information and belief contained in the official crash report given to the Extortion 17 families after the deaths of their sons and based on other information, Defendant ASOU regularly compromises the security of U.S. soldiers' lives in exchange for financial benefits and gratuities from Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda. Defendant ASOU at all material times acted in its unofficial or official capacity, particularly insofar as it engaged in concert with terrorists and terrorist groups in a criminal enterprise designed to enrich the country of [Defendant] Afghanistan. Defendant ASOU solicits and accepts money and other things of value from terrorists and terrorist groups in exchange for compromising the security and planning the deaths of Plaintiffs' decedents and others similarly situated. Defendant ASOU is therefore not precluded from suit by 18 U.S.C. § 2337(2) because it did not act in its official capacity or under color of legal authority for purposes of this count. Defendant ASOU, by its activities herein, waived its immunity, either explicitly or by implication, pursuant to 28 U.S.C. § 1605(a)(1).

26. Defendant ANSF is comprised of the Afghan Armed Forces, the Afghan National Police, the Afghan Border Police, the Afghan Local Police, and includes members of the National Directorate of Security. Based upon information and belief contained in the official crash report given to the Extortion 17 families after the deaths of their sons and based on other information, Defendant ANSF regularly compromises the security of U.S. soldiers' lives in exchange for financial benefits and gratuities from Defendant Iran,

Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda. Defendant ANSF at all material times acted in its unofficial or official capacity, particularly insofar as it engaged in concert with terrorists and terrorist groups in a criminal enterprise designed to enrich the country of [Defendant] Afghanistan. Defendant ANSF solicits and accepts money and other things of value from terrorists and terrorist groups in exchange for compromising the security and planning the deaths of Plaintiffs' decedents and others similarly situated. Defendant ANSF is therefore not precluded from suit by 18 U.S.C. § 2337(2) because it did not act in its official capacity or under color of legal authority for purposes of this count. Defendant ANSF, by its activities herein, waived its immunity, either explicitly or by implication, pursuant to 28 U.S.C. § 1605(a)(1).

27. Defendant Afghanistan is a foreign sovereign state located in central Asia that shares borders with [Defendant] Iran, Turkmenistan, Uzbekistan, Tajikistan, and Pakistan. Afghanistan is internationally known to be run by terrorist groups actively involved in a Taliban-led insurgency. Defendant Afghanistan, acting through and on behalf of Defendant Karzai, Defendant Taliban, Defendant Al Qaeda and its agents, servants, and organizations, some of whom are identified herein, whose activities, as described below, were outside the scope of immunity provided by FSIA and have been deemed terrorist activities pursuant to President William J. Clinton's July 4, 1999 Executive Order No. 13129[1], its continuation Order of June 30, 2001 by President George W. Bush, and

---

[1] " . . . Actions and policies of [Defendant] Taliban in [Defendant] Afghanistan, in allowing territory under its control in Afghanistan to be used as a safe haven and base of operations for . . . the Al-Qaida [sic] organization who have committed and threaten to continue to commit acts of

President George W. Bush's September 24, 2001 Executive Order on Terrorist Financing. Defendant Afghanistan at all material times acted in its unofficial or official capacity, particularly insofar as it engaged in concert with terrorists and terrorist groups in a criminal enterprise designed to enrich itself. Defendant Afghanistan solicits and accepts money and other things of value from terrorists and terrorist groups in exchange for compromising the security and planning the deaths of Plaintiffs' decedents and others similarly situated. Defendant Afghanistan is therefore not precluded from suit by 18 U.S.C. § 2337(2) because it did not act in its official capacity or under color of legal authority for purposes of this count. Defendant Afghanistan, by its activities herein, waived its immunity, either explicitly or by implication, pursuant to 28 U.S.C. § 1605(a)(1).

28. Defendant Taliban is an unincorporated association that served and continues to serve as the *de facto*, if not the *de jure*, government of Afghanistan from approximately 1996. It is a terrorist organization and not a military force. Defendant Taliban is currently headquartered and physically present in Afghanistan and is an Islamic fundamentalist movement. Defendant Taliban has declared itself to be the legitimate government of [Defendant] Afghanistan. Defendant Taliban is described by the U.S. Department of Treasury, Office of Foreign Asst Control in its Overview of Sanctions Regulations as ". . . listed on the Office of Foreign Asst Control's list of 'Specially Designated Nationals and Blocked Persons.'" Defendant Taliban is supported, controlled, funded, protected, aided, and abetted by Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei,

---

violence against the United States and its nationals, constitute an unusual and extraordinary threat to the national security and foreign policy of the United States, and hereby declare a national emergency to deal with that threat."

Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, and Defendant Al Qaeda. Defendant Taliban at all material times acted in its unofficial or official capacity, particularly insofar as it engaged in concert with terrorists and terrorist groups in a criminal enterprise designed to enrich its own group and the country of [Defendant] Afghanistan. Defendant Taliban solicits and accepts money and other things of value from terrorists and terrorist groups in exchange for compromising the security and planning the deaths of Plaintiffs' decedents and others similarly situated. Defendant Taliban is therefore not precluded from suit by 18 U.S.C. § 2337(2) because it did not act in its official capacity or under color of legal authority for purposes of this count. Defendant Taliban, by its activities herein, waived its immunity, either explicitly or by implication, pursuant to 28 U.S.C. § 1605(a)(1).

29. Defendant Al Qaeda, or the Islamic Army, is an unincorporated, militant terrorist association and a charter member of the parent terrorist group, the Muslim Brotherhood and [Defendant] Taliban, and was originally organized by Osama Bin Laden in order to perpetrate acts of international terrorism and wage an Islamic jihad against the United States and others. Defendant Al Qaeda is primarily headquartered in Afghanistan. It is a terrorist organization and is not a military force. Defendant Al Qaeda is supported, controlled, funded, protected, aided, and abetted by Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, and Defendant Taliban. Defendant Al Qaeda, at all material times acted in its unofficial or official capacity, particularly insofar as it engaged in concert with terrorists and terrorist groups in a criminal enterprise designed to enrich the country of [Defendant] Afghanistan.

Defendant Al Qaeda solicits and accepts money and other things of value from terrorists and terrorist groups in exchange for compromising the security and planning the deaths of Plaintiffs' decedents and others similarly situated. Defendant Al Qaeda is therefore not precluded from suit by 18 U.S.C. § 2337(2) because it did not act in its official capacity or under color of legal authority for purposes of this count. Defendant Al Qaeda, by its activities herein, waived its immunity, either explicitly or by implication, pursuant to 28 U.S.C. § 1605(a)(1).

## STATEMENT OF FACTS

30. On or about February 23, 1998, Defendant Al Qaeda, led by master terrorist leader Osama Bin Laden, issued a Fatwah (Religious Decree), dictating to all Muslim people to kill Americans and their allies - civilians and military - declaring that the slaying of Americans is an individual duty for every Muslim. Bin Laden's Fatwah stated, in part, as follows:

> [I]n compliance with God's order, we issue the following Fatwah to all Muslims: The ruling to kill the Americans and their allies – civilians and military – is an individual duty for every Muslim who can do it . . . We – with God's help – call on every Muslim who believes in God and wishes to be rewarded to comply with God's order to kill the Americans and plunder their money wherever and whenever they find it.

31. Later, the 9/11 Commission Report summarizes what Bin Laden, acting by and through Defendant Taliban and Defendant Al Qaeda, said when interviewed in [Defendant] Afghanistan by ABC-TV: "It is far better for anyone to kill a single American soldier than to squander his efforts on other activities."

32. In carrying out its terrorist attacks, including its attack on members of Navy SEAL Team VI and special operations servicemen as described herein, Defendant Iran, Defendant

Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant

OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban,

and Defendant Al Qaeda, conspiring and acting in concert, purposefully directed their

unlawful, barbaric, and murderous actions and conduct towards the United States and the

U.S. military.

33. Defendant Karzai, Defendant Afghanistan, Defendant OCG, Defendant ANSF,

Defendant ASOU, Defendant Taliban and Defendant Al Qaeda have received material

support and financial aid and assistance from Defendant Iran, Defendant Ahmadinejad,

Defendant Khamenei, and Defendant IRGC, and by and through their officials, agents,

and employees, aided and abetted Defendant Taliban and Defendant Al Qaeda to carry

out terrorist acts against the United States and members of the U.S. military.

34. On or around May 2, 2011, members of Navy SEAL Team VI and other special forces

servicemen carried out an operation that resulted in the capture and killing of Osama Bin

Laden. Only two days after, Vice President Biden and former Director of the Central

Intelligence Agency ("CIA") and then Director of CIA, Leon Panetta, publicly disclosed

that SEAL Team VI was responsible for conducting the successful raid on Osama Bin

Laden's compound, thereby making members of SEAL Team VI and other special

operations servicemen and their families a target for retaliatory attacks from Defendant

Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant

Karzai, Defendant Taliban, Defendant Al Qaeda and other Islamic jihadists. The name of

SEAL Team VI was revealed at a Ritz Carlton event in Delaware.

35. Robert Gates, the prior Secretary of Defense, said the identity of SEAL Team VI would

not be revealed. However, after Vice President Biden and shortly thereafter Secretary of

Defense-Designate Leon Panetta intentionally released the name of SEAL Team VI, and, in Panetta's case, the personal name of the commander in charge of the particular unit that successfully raided Osama Bin Laden, Gates expressed severe criticism if not horror that the classified, national security information had been disclosed in violation of the law.

36. Indeed, Robert Gates met with the Team who took down Bin Laden and said that the Team now feared for their and their families' safety. Gates said, "I had reminded everyone that the techniques, tactics, and procedures the SEALs had used in the Bin Laden operation were used every night in Afghanistan and elsewhere in hunting down terrorists and other enemies. It was therefore essential that we agree not to release any operational details of the raid. That we killed him . . . is all we needed to say. That commitment lasted about five hours. The initial leaks came from The White House and the CIA. They just couldn't wait to brag and to claim credit." Gates continued, "The SEALs shared with me their concerns about the leaks, particularly the fact that reporters were nosing around their communities trying to find them. They were worried about their families."

37. On August 6, 2011, just three (3) months after the Bin Laden raid, Afghan terrorist [Defendant] Taliban jihadists shot down a U.S. Boeing CH-47D Chinook military helicopter, call sign Extortion 17, in [Defendant] Afghanistan, killing thirty (30) Americans, including twenty-two (22) Navy SEALs and SEAL support personnel, five (5) Army National Guardsmen, three (3) Air Force members and eight (8) Afghans [seven commandoes and one interpreter]. Of the Navy SEALs that were killed, all but two were members of the elite SEAL Team VI, the unit that carried out the operation

resulting in the death of Bin Laden just ninety (90) days earlier. Eight (8) Afghans died [perhaps suicide bombers] on the Chinook that night after all seven (7) commandoes were inexplicably switched out at the last minute for the previous seven (7) commandoes originally scheduled to travel on the Chinook August 6, 2011.

38. The large Chinook helicopter shot down by [Defendant] Taliban jihadists was hastily dispatched into a severe combat zone without any escorts or air support under the direction of Defendant Karzai, Defendant OCG, Defendant ASOU, and Defendant ANSF to reinforce U.S. Army Rangers during a firefight with Taliban militants.

39. In addition, Defendant Karzai, Defendant OCG, Defendant ASOU, and Defendant ANSF chose a regular crew to operate the helicopter, rather than a special operations pilot and crew, which would have been better equipped to handle the aircraft when it was purportedly shot down by a rocket-propelled grenade or MANPADS that caused the aircraft to burst into flames and fall vertically to the ground. If a MH-47, the helicopter flown by Army Special Operations Aviation, had been used instead, it may have diverted the enemy fire, thereby saving the lives of our elite fallen heroes. In fact, seventeen (17) days prior to the shoot-down of the Chinook, a similar attack was made on an MH-47G resulting in no more than small caliber bullet damage to the helicopter.

40. Eastern [Defendant] Afghanistan is known for its hazardous terrain for military aircraft, given its steep mountain ranges that provide shelter for militants and terrorists armed with rocket-propelled grenade launchers and MANPADS. The CH-47D Chinook military helicopter used for Extortion 17 – a large, slow-moving transport carrier with its conventional airframe built in the early 1960s and last retrofitted in the mid 1980s – is particularly vulnerable as it is often forced to ease its way through valleys where

insurgents and terrorists can achieve more level lines of fire from mountainsides and houses.

41. Based on various agreements between the United States and President [Defendant] Karzai, American forces cannot be sent into battle unless it is at the direction, authorization, and execution of Defendant Karzai and other Afghan authorities such as Defendant OCG, Defendant ASOU, and Defendant ANSF. Despite the increased danger and vulnerability, Defendant Karzai as commander of the Afghan Armed Forces, Defendant OCG, Defendant ASOU, Defendant ANSF, and other high-level military officials in Afghanistan sent these Navy SEALs and other special operations servicemen into battle without special operations aviation and proper air support, maliciously, purposely, knowingly, and negligently subjecting them to reasonably foreseen and unnecessary dangers, further exposing them to insurgent terrorist attacks and therefore death.

42. Tellingly, it was Defendant Karzai who confirmed on Afghan national radio that it was SEAL Team VI that was shot down by Defendant Taliban. This occurred only minutes after Extortion 17 was shot down.

43. In addition, the Afghan forces, including Defendant OCG, Defendant ASOU, and Defendant ANSF accompanying the Navy SEAL Team VI servicemen, National Guardsmen, and other special operations specialists on the helicopter were not properly vetted and, upon information and belief, acted in concert with Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant Afghanistan, and Defendant Al Qaeda by disclosing classified information to Defendant Taliban about the mission, resulting in the shoot-down of the helicopter.

44. Defendant Afghanistan, Defendant Karzai, Defendant OCG, Defendant ASOU, and Defendant ANSF have a history of turning on U.S. military forces and killing them in a premeditated, calculated, and cold-blooded attack. Attacks on U.S. coalition forces by Afghan forces (the so-called green-on-blue attacks)[2] – made up of Defendant OCG, Defendant ASOU, and Defendant ANSF – are a major threat in the war in Afghanistan, especially since the U.S. military, at the demands of Defendant Karzai, Defendant Afghanistan, Defendant OCG, Defendant ASOU, and Defendant ANSF, is increasingly shifting security responsibilities to Afghan forces. Defendant Taliban and Defendant Al Qaeda have seized on the attacks against U.S. military forces in their propaganda, and routinely claim each attack to be a result of infiltration. Mullah Mohammad Omar, the leader of Defendant Taliban, addressed the issue of green-on-blue attacks and released a statement in August of 2012 - exactly one year after Extortion 17 was shot down. Omar claimed that Defendant Taliban "cleverly infiltrated in the ranks of the enemy according to the plan given to them last year," and he urged government officials and security personnel, including Defendant Karzai, Defendant Afghanistan, Defendant OCG, Defendant ASOU, and Defendant ANSF, to defect and join Defendant Taliban as a matter of religious duty. Omar continued a few months later urging Defendant Afghanistan, Defendant Karzai, Defendant OCG, Defendant ASOU, and Defendant ANSF to "increase [their] efforts to expand the area of infiltration in the ranks of the enemy and to bring about better order and array in the work . . . we call on the Afghans

---

[2] All attacks in Afghanistan in which a person purporting to be affiliated with Afghan security forces – whether Afghan National Army, Afghan Local Police, Afghan Border Police, Afghan Uniformed Police, Afghan Air Force, other branches, or security personnel hired by Afghan authorities – are considered "green." Similarly, all persons purporting to be affiliated with the U.S., ISAF, or NATO security forces are considered "blue."

who still stand with the stooge regime to turn to full-fledged cooperation with their Mujahid people like courageous persons in order to protect national interests and to complete independence of the country. Jihadic activities inside the circle of the State militias are the most effective stratagem . . ." This infiltration by Defendant Taliban and Defendant Al Qaeda is a direct and proximate result of Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, and Defendant IRGC paying money and other financial benefits to Defendant Karzai, Defendant Afghanistan, Defendant OCG, Defendant ASOU, and Defendant ANSF, whereby these Defendants – in exchange for the payments – further, facilitate and acquiesce to the infiltration. In addition, upon information and belief, Defendant Karzai, Defendant Afghanistan, Defendant OCG, Defendant ASOU, and Defendant ANSF further, facilitate and acquiesce to the infiltration in order to appease Defendant Taliban and Defendant Al Qaeda, which in exchange, agree not to assassinate and eliminate Defendant Karzai and his [Defendant] governments, thereby allowing them to remain in existence as lackeys of these terrorist groups and Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, and Defendant IRGC, in pursuit of the Islamic caliphate.

45. It was reported on February 4, 2014, that Defendant Karzai arranged secret contacts with Defendant Taliban. The New York Times reports that Defendant Hamid Karzai of Afghanistan "has been engaged in secret contacts with the [Defendant] Taliban about reaching a peace agreement without the involvement of his American and Western allies, further corroding already strained relations with the United States." It continues, "[t]he secret contacts appear to help explain a string of actions by [Defendant] Mr. Karzai that seem intended to antagonize his American backers . . . In recent weeks, [Defendant] Mr.

Karzai has continued to refuse to sign a long-term security agreement with Washington
that he negotiated, insisted on releasing hardened Taliban militants from prison and
distributed distorted evidence of what he called American war crimes." American
officials say "they are uncertain whether they can maintain even minimal security
cooperation with [Defendant] Mr. Karzai's government or its successor after coming
election."

46. Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC,
Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda have been directly
and proximately involved with and caused the death of U.S. servicemen in the Middle
East. Specifically, it has been revealed that Defendant Iran pays other terrorist
organizations a $1,000 bounty for each American soldier who is murdered and $6,000 for
each American Army vehicle that is destroyed. At least five Iranian companies and
Defendant IRGC are sending money to Islamist terrorist groups in Afghanistan in order
to fund the fight against Western powers, led by the United States. The financing is so
large that one Taliban money-handler claims that he personally has collected nearly
$80,000 in the past from Defendant Iran. Afghan intelligences and [Defendant] Taliban
officials have revealed how the money is transferred from straw-men companies to
Afghan rebels.

47. Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC,
Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant
Afghanistan, Defendant Taliban, and Defendant Al Qaeda, through their intentional,
willful, and malicious conduct, have perpetuated the killing of U.S. servicemen, and have

directly contributed to, and aided and abetted in the killing of the members of SEAL Team VI and other special operations servicemen described herein.

48. After the bodies of the Navy SEAL Team VI unit and other special operations servicemen were returned to Dover, the Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, asked for an explanation from President Obama, Vice President Biden, and other military officials including Admiral William H. McRaven, who at all material times was in charge of the Afghan theatre. A full, satisfactory, and credible explanation was not forthcoming and has since not been made to Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents. For example, there was an encounter between Plaintiff Strange and President Obama where Plaintiff Strange told Mr. Obama that he did not need to know about his son (after the President stated to Plaintiff Strange that his son was a hero for the country); rather, Plaintiff Strange wanted to know what happened to his son. President Obama mentioned he would look into this "very deeply," yet still, no answers have been forthcoming.

### FIRST CLAIM FOR RELIEF

**(18 U.S.C. § 2333 (Anti-Terrorism Act Claim) Each and Every Defendant))**

49. Plaintiffs, acting on behalf of themselves and their sons, Plaintiffs' decedents, repeat and reallege all of the previous allegations in paragraphs 1 through 48 of this Complaint with the same force and affect, as if fully set forth herein again at length.

50. Plaintiffs, acting on behalf of themselves and their sons, Plaintiffs' decedents, who are and were at all times nationals of the United States, suffered substantial injuries to their persons, property, and business by reason of the acts of international terrorism, and not acts of war, perpetrated in their unofficial capacities by Defendant Iran, Defendant

Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda on August 6, 2011, that resulted in the death of Plaintiffs' decedents, a substantial portion of the planning, training, and preparation for which occurred primarily outside the territorial jurisdiction of the United States.

51. Defendant Iran's, Defendant Ahmadinejad's, Defendant Khamenei's, Defendant Karzai's, Defendant Afghanistan's and Defendant Taliban's material support and assistance to Defendant IRGC, Defendant OCG, Defendant ASOU, Defendant ANSF, and Defendant Al Qaeda in Afghanistan, as well as its provision of a safe haven and base of operations to Defendant Al Qaeda in [Defendant] Afghanistan from which they carried out terrorist attacks on U.S. servicemen aboard Extortion 17, including but not limited to Plaintiffs' decedents, Michael Strange, Patrick Hamburger and John Douangdara, twenty-two Navy SEALs and SEAL support, five National Guardsmen and three Air Force members – fifteen of the SEALs being the same Team that captured and killed their master terrorist Bin Laden – in retaliation for their master's demise, constitutes acts of international terrorism that caused substantial injury to the persons, property, and business of Plaintiffs and Plaintiffs' decedents.

52. Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, acting in concert with each other and in their unofficial capacities here, attacked Extortion 17, which also constitutes an act of international terrorism and caused substantial injuries to the persons, property,

and business of Plaintiffs, acting on behalf of themselves and their sons, Plaintiffs' decedents.

53. By reason of the wrongful conduct of Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, each and every one of them, jointly and severally, Plaintiffs, acting on behalf of themselves and their sons, Plaintiffs' decedents, suffered conscious pain, suffering, severe emotional distress and death, and have suffered pecuniary and economic damage, loss of support, loss of nurture, care and guidance, grief, anguish, loss of services, loss of society, and other mental and physical injuries.

54. Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, demand that judgment be entered against Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda jointly and severally, including an award of treble damages as consistent with 18 U.S.C. § 2333(a), compensatory and actual damages, reasonable attorneys fees, pre-judgment interest, post-interest, costs, and an award in excess of $200,000,000.00 for actual and compensatory, treble in excess of $600,000,000.00, including attorney's fees and costs, and such other relief as the Court may deem just and proper.

## SECOND CLAIM FOR RELIEF

### (18 U.S.C. § 2339 (Harboring or Concealing Terrorists) Each and Every Defendant))

55. Plaintiffs, acting on behalf of themselves and their sons, Plaintiffs' decedents, repeat and reallege all of the previous allegations in paragraphs 1 through 54 of this Complaint with the same force and affect, as if fully set forth herein again at length.

56. Plaintiffs, acting on behalf of themselves and their sons, Plaintiffs' decedents, who are and were at all times nationals of the United States, suffered substantial injuries to their persons, property, and business by reason of the harboring and concealing of terrorists by Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda.

57. Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, acting in concert with each other and in their unofficial capacities here, harbored and concealed persons who each Defendant knew or had reasonable grounds to know is about to commit destruction of an aircraft.

58. By reason of the wrongful conduct of Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, each and every one of them, jointly and severally, Plaintiffs, acting on behalf of themselves and their sons, Plaintiffs' decedents, suffered conscious pain, suffering, severe emotional distress and death, and have suffered pecuniary and economic damage,

loss of support, loss of nurture, care and guidance, grief, anguish, loss of services, loss of society, and other mental and physical injuries.

59. Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, demand that judgment be entered against Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda jointly and severally, including an award of treble damages as consistent with 18 U.S.C. § 2333(a), compensatory and actual damages, reasonable attorneys fees, pre-judgment interest, post-interest, costs, and an award in excess of $200,000,000.00 for actual and compensatory, treble in excess of $600,000,000.00, including attorney's fees and costs, and such other relief as the Court may deem just and proper.

## THIRD CLAIM FOR RELIEF

### (18 U.S.C. §§ 2339A (Providing Material Support or Resources to a Terrorist Organization) Each and Every Defendant))

60. Plaintiffs, acting on behalf of themselves and their sons, Plaintiffs' decedents, repeat and reallege all of the previous allegations in paragraphs 1 through 59 of this Complaint with the same force and affect, as if fully set forth herein again at length.

61. Plaintiffs, acting on behalf of themselves and their sons, Plaintiffs' decedents, who are and were at all times nationals of the United States, suffered substantial injuries to their persons, property, and business by reason of providing material support and resources and concealing and disguising the nature, location, source, or ownership of material support and resources for acts of terrorism perpetrated by Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant

OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda.

62. Defendant Iran's, Defendant Ahmadinejad's, Defendant Khamenei's, Defendant IRGC's, Defendant Karzai's, Defendant OCG's, Defendant ASOU's, Defendant ANSF's, and Defendant Afghanistan's material support and assistance to Defendant Al Qaeda and Defendant Taliban constitute acts of terrorism that caused substantial injuries and death to the persons, property, and business of Plaintiffs and Plaintiffs' decedents.

63. Defendant Taliban and Defendant Al Qaeda are both terrorist organizations and are assisted by Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, and Defendant Afghanistan in their terroristic conduct.

64. Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, acting individually and in concert, were engaged in terrorism and violations of human and civil rights against the law of nations, international law, and of countries and states in that, *inter alia*, they engaged in violent acts, and acts dangerous to human life that were intended to intimidate or coerce a population and its military, and influence the policy of a government and its people by intimidation and coercion; and to affect the conduct of a government by mass destruction, assassination, kidnapping or hostage taking, and other tortious acts as defined by 31 CFR 594.311 and Chapter 113B of Part I of Title 18 of the United States Code.

65. Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant

Afghanistan, Defendant Taliban, and Defendant Al Qaeda have also engaged in criminal acts intended and calculated to create a state of terror in the minds of particular persons or group of persons or the general public as defined in the League of Nations Convention (1937) and the General Assembly Resolution 51/210 (1999) wherein such acts are strongly condemned.

66. Defendant Iran's, Defendant Ahmadinejad's, Defendant Khamenei's, Defendant IRGC's, Defendant Karzai's, Defendant OCG's, Defendant ASOU's, Defendant ANSF's, Defendant Afghanistan's, Defendant Taliban's, and Defendant Al Qaeda's acts of terrorism violate the law of nations and international standards of decency.

67. Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda conspired with and aided, abetted, facilitated, solicited, and gave material support to other terrorist organizations, in violation of the law of nations.

68. At the time of the occurrences herein, Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, acting individually and in concert with the terrorist organizations Defendant Al Qaeda and Defendant Taliban, and other terrorist groups and nation states, were engaged in committing violent activities, including but not limited to the murders of the SEAL members and other special operations servicemen described herein.

69. As heretofore alleged, Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant

ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, directly and by and through their agents, have provided substantial support to terrorist organizations which have then carried out vicious acts against both civilians and military targets, to inflict the maximum amount of damage, with total disregard for human life. Again, this includes direct or indirect payments of $1,000 bounty per head for the murder of U.S. servicemen and $6,000 for the destruction of U.S. military vehicles. This support has been in the form of direct payments, training, equipping, and mobilizing terrorist groups and others who seek to harm U.S. nationals and military. The direct result of this support has been the murder described herein and other crimes against humanity.

70. At all times hereto, Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, and Defendant Afghanistan knew or should have known that providing such assistance to Defendant Al Qaeda and Defendant Taliban and other terrorist groups and nation states would facilitate and aid and abet the commission of murders, including the murders of the Plaintiffs' decedents, SEAL Team VI members and other special operations servicemen.

71. As a result of such support to terrorist groups, Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda violated the law of nations, established U.S. law, international laws, treaties and norms, including but not limited to those sections previously set forth: The Declaration on Measures to Eliminate International Terrorism and citations therein incorporated by reference adopted by the United Nations General Assembly on December 9, 1994 (GA

Res. 49/50); The Anti-Terror Act, 18 U.S.C. 113B; The Anti-Terrorism and Effective

Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996); The Uniting and

Strengthening America by Providing Appropriate Tools Required to Intercept and

Obstruct Terrorism Act of 2001 ("USA Patriot Act"), Pub. L. No. 107-56, 115 Stat. 271

(2001); The Convention on the Prevention and Punishment of the Crime of Genocide;

Art. 2, December 9, 1949, 78 UNTS; International Convention for the Suppression of the

Financing of Terrorism, 39 I.L.M. 270 (Dec. 9, 1997); G.A. Res. 54/109, 1 UN Doc

A/RES/54/109 (Dec. 1, 1999) and ratified by over 130 countries (The Financing

Convention); United Nations Charter, 59 State. 1031, 3 Bevans 1153 (1945); Universal

Declaration of Human Rights, G.A. Res. 217A (iii), U.N. Doc. A/810 (1948);

International Covenant on Civil and Political Rights, G.A. Res. 2222A(xxi), 21 U.N.

Doc., GAOR Supp. (No. 16) at 52 U.N. Doc. A 6316 (1966); Common Article 3 of the

1949 Geneva Convention; Article 4 and 13 of the 1997 Geneva Protocol II; Convention

on Combating Bribery of Foreign Public Officials in International Business Transactions,

37 I.L.M. 1(Dec. 18, 1997); and other fundamental principles.

72. The murders of Plaintiffs' decedents were a direct and proximate result of Defendant

Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant

Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan,

Defendant Taliban, and Defendant Al Qaeda conspiring with and providing aid to

terrorist organizations, and through their individual and government acts, as hereinabove

alleged, jointly and severally.

73. Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC,

Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, and Defendant

Afghanistan are liable to Plaintiffs in that they aided and abetted, directed, ordered, requested, paid, were reckless in dealing with, participated in a joint criminal enterprise with, confirmed, ratified, and conspired with Defendant Al Qaeda, Defendant Taliban, and other terrorist groups and nation states in bringing about and perpetrating acts of terrorism against Plaintiffs and their decedents.

74. Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan and their agents knowingly and substantially assisted Defendant Al Qaeda, Defendant Taliban, and other terrorist groups and nation states and their collaborators to commit acts that violate established international law and norms and facilitated the commission of international law violations by providing these terrorist groups and their collaborations with the tools, money, instrumentalities, and services to commit these violations with actual or constructive knowledge that those tools, instrumentalities and services would be (or could be) used in connection with the purpose of taking down Extortion 17.

75. By reason of the wrongful conduct of Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, and every one of them, jointly and severally, Plaintiffs, acting on behalf of themselves and their sons, Plaintiffs' decedents, suffered conscious pain, suffering, severe emotional distress and death, and have suffered pecuniary and economic damage, loss of support, loss of nurture, care and guidance, grief, anguish, loss of services, loss of society, and other mental and physical injuries.

76. Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, demand that judgment be entered against Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, each and every one of them, jointly and severally, including an award of treble damages as consistent with 18 U.S.C. § 2333(a), compensatory and actual damages, reasonable attorneys fees, pre-judgment interest, post-interest, costs, and an award in excess of $200,000,000.00 for actual and compensatory, treble in excess of $600,000,000.00, including attorney's fees and costs, and such other relief as the Court may deem just and proper.

**FOURTH CLAIM FOR RELIEF**

**(18 U.S.C. § 1961 *et seq*. (Racketeer Influenced and Corrupt Organizations) – Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Taliban, Defendant Al Qaeda))**

77. Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, repeat and reallege all of the previous allegations in paragraphs 1 through 76 of this Complaint with the same force and affect, as if fully set forth herein again at length.

78. Non-sovereign Defendants are each "persons" within the meaning of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

79. The Defendant terrorists and terrorist groups are each an "enterprise" within the meaning of RICO, the activities of which effect interstate and foreign commerce.

80. By virtue of the predicate acts described in this Complaint, including without limitations: engaging in predicate acts of terrorism, engaging in terrorism, murder, laundering of monetary instruments, engaging in monetary transactions improperly derived from

unlawful activity, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Taliban, and Defendant Al Qaeda, transferred, received, and supplied financing and income that was derived, both directly and indirectly, from a pattern of racketeering activity in which each of them participated as a principal and used and invested, both directly and indirectly, such income and the proceeds of such income, in establishing and operating terrorist enterprises in violation of 18 U.S.C. § 1962(a).

81. As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(a), Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, suffered the loss of valuable property, financial services and support, and suffered other pecuniary damages.

82. By reason of the wrongful conduct of Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Taliban, and Defendant Al Qaeda, each and every one of them, jointly and severally, Plaintiffs, acting on behalf of themselves and their sons, Plaintiffs' decedents, suffered conscious pain, suffering, severe emotional distress and death, and have suffered pecuniary and economic damage, loss of support, loss of nurture, care and guidance, grief, anguish, loss of services, loss of society, and other mental and physical injuries.

83. Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, demand that judgment be entered against Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, each and every one of them, jointly and severally, including an award of treble damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable

attorneys fees, pre-judgment interest, post-interest, costs, and an award in excess of $200,000,000.00 for actual and compensatory, treble in excess of $600,000,000.00, including attorney's fees and costs, and such other relief as the Court may deem just and proper.

**FIFTH CLAIM FOR RELEF**

**(28 U.S.C. § 1605A (Terrorism Exception to FSIA) – Defendant Iran, Defendant Khamenei, Defendant Ahmadinejad, Defendant IRGC))**

84. Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, repeat and reallege all of the previous allegations in paragraphs 1 through 83 of this Complaint with the same force and affect, as if fully set forth herein again at length.

85. The deaths of Plaintiffs' decedents, who were at all material times nationals of the United States at the time of their deaths, resulted from the acts of extrajudicial killing and aircraft sabotage.

86. Defendant Taliban and Defendant Al Qaeda, who received material support and resources from Defendant Iran, Defendant Khamenei, Defendant Ahmadinejad and Defendant IRGC, perpetrated these acts of extrajudicial killing and aircraft sabotage.

87. Agents, officials or employees of Defendant Iran, Defendant Khamenei, Defendant Ahmadinejad, and Defendant IRGC provided material support and resources to Defendant Taliban and Defendant Al Qaeda while acting in the scope of their offices, agencies, or employment. Similar conduct, if committed by agents, officials or employees of the United States, would be actionable.

88. Defendant Iran and its agents and organizations, Defendant Khamenei, Defendant Ahmadinejad, and Defendant IRGC have been designated by the U.S. government as a state sponsor of terrorism at the time of the shoot-down of Extortion 17, August 6, 2011.

89. By reason of the wrongful conduct of Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, and Defendant IRGC, each and every one of them, jointly and severally, Plaintiffs, acting on behalf of themselves and their sons, Plaintiffs' decedents, suffered conscious pain, suffering, severe emotional distress and death, and have suffered pecuniary and economic damage, loss of support, loss of nurture, care and guidance, grief, anguish, loss of services, loss of society, and other mental and physical injuries.

90. Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, demand that judgment be entered against Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda jointly and severally, including an award of compensatory and actual damages, punitive damages, reasonable attorneys fees, pre-judgment interest, post-interest, costs, and an award in excess of $200,000,000.00, and such other relief as the Court may deem just and proper.

## SIXTH CLAIM FOR RELIEF

### (Assault and Battery – Each and Every Defendant)

91. Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, repeat and reallege all of the previous allegations in paragraphs 1 through 90 of this Complaint with the same force and affect, as if fully set forth herein again at length.

92. As a result of the August 6, 2011 shoot-down of Extortion 17, Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, acting in concert with each other, placed Plaintiffs' decedents

in apprehension of an imminent harmful or offensive contact, and suffered harmful, offensive bodily contact, from which Plaintiffs' decedents ultimately died. Here, the intent to cause offensive touching resulted in the death of SEAL Team VI members and other special operations servicemen.

93. By reason of the wrongful conduct of Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, each and every one of them, jointly and severally, Plaintiffs and Plaintiffs' decedents suffered conscious pain, suffering, severe emotional distress and the fear of imminent serious bodily injury or death, and have suffered pecuniary and economic damage, loss of support, loss of nurture, care and guidance, grief, anguish, loss of services, loss of society, and other mental and physical injuries.

94. Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, demand that judgment be entered against Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda jointly and severally, including an award of compensatory and actual damages, punitive damages, reasonable attorneys fees, pre-judgment interest, post-interest, costs, and an award in excess of $200,000,000.00, and such other relief as the Court may deem just and proper.

## SEVENTH CLAIM FOR RELIEF

**(Intentional Infliction of Emotional Distress – Each and Every Defendant)**

95. Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, repeat and reallege all of the previous allegations in paragraphs 1 through 94 of this Complaint with the same force and affect, as if fully set forth herein again at length.

96. The August 6, 2011 intentional shoot-down of Extortion 17 was the result of intentional, extreme, and outrageous conduct that exceeded all reasonable bounds of decency.

97. Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda knew the intentional shoot-down of Extortion 17, carrying in it the U.S. military's most elite fighters, would inflict severe emotional distress and mental anguish on the thirty (30) Americans on board, including Plaintiffs' decedents and thus Plaintiffs, and Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, intended to inflict severe emotional distress and mental anguish on these innocent heroes.

98. Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, also knew or should have known that family members of innocent persons trapped inside a Chinook-47D and subsequently murdered at the hands of terrorists, terrorist organizations and even those who were supposed to work with Plaintiffs' decedents as partners, would suffer severe

emotional distress and mental anguish as a result of the murder of their children. Defendant Karzai, Defendant OCG, Defendant ASOU, and Defendant ANSF did not supply proper protection for the U.S. servicemen and the lack of sufficient protection undoubtedly contributed to their deaths.

99.  Additionally, Defendant Karzai, Defendant OCG, Defendant ASOU, and Defendant ANSF acted outrageously when they, acting in concert with each other, invited a Muslim cleric – purportedly an Afghan Commander – to the ramp ceremony of the fallen Navy SEALs and other special operations servicemen, while he disparaged the memory of Plaintiffs' decedents by damning them as infidels to hell.

100.  By reason of the wrongful conduct of Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, each and every one of them, jointly and severally, Plaintiffs and Plaintiffs' decedents suffered conscious pain, suffering and death, and have suffered pecuniary and economic damage, loss of support, loss of nurture, care and guidance, grief, anguish, loss of services, loss of society, and other mental and physical injuries.

101.  Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, demand that judgment be entered against Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, each and every one of them, jointly and severally, including an award of compensatory and actual damages, punitive damages, reasonable attorneys fees, pre-judgment interest,

post-interest, costs, and an award in excess of $200,000,000.00, and such other relief as the Court may deem just and proper.

## EIGHTH CLAIM FOR RELIEF

### (Wrongful Death – Each and Every Defendant)

102. Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, repeat and reallege all of the previous allegations in paragraphs 1 through 101 of this Complaint with the same force and affect, as if fully set forth herein again at length.

103. Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, each and every one of them, jointly and severally, were responsible for the deaths of the United States Navy SEAL Team VI members and other special operations servicemen that were killed in the August 6, 2011 helicopter attack, including but not limited to Plaintiffs' decedents Michael Strange, Patrick Hamburger and John Douangdara.

104. The deaths of the Plaintiffs' decedents were a result of negligence or unlawful actions on the part of Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda.

105. By reason of the wrongful conduct of Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, each and every one of them, jointly and severally, Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, suffered conscious pain, suffering, severe

emotional distress and death, and have suffered pecuniary and economic damage, loss of support, loss of nurture, care and guidance, grief, anguish, loss of services, loss of society, and other mental and physical injuries.

106.  Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, demand judgment be entered against Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, each and every one of them, jointly and severally, including an award of compensatory and actual damages, punitive damages, reasonable attorneys fees, pre-judgment interest, post-interest, costs, an award in excess of $200,000,000.00, and such other relief as the Court may deem just and proper.

## NINTH CLAIM FOR RELIEF

### (Negligence – Defendants Karzai, OCG, ASOU, ANSF, Afghanistan)

107.  Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, repeat and reallege all of the previous allegations in paragraphs 1 through 106 of this Complaint with the same force and affect, as if fully set forth herein again at length.

108.  Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, and Defendant Afghanistan had a duty to act reasonably and use due care towards Plaintiffs' decedents Navy SEAL Team VI and other special operations servicemen since the United States and Defendant Afghanistan, including Defendant Afghanistan's leader, Defendant Karzai, and Afghanistan's military personnel, Defendants OCG, ASOU, and ANSF, are purportedly working together to respond to threats, encourage international peace and security, and to help the Afghan people chart a secure, democratic, and prosperous future. Various

partnership agreements and memoranda exist between the United States and Defendant
Afghanistan and Defendant Karzai setting forth nature of their relationship and creating a
fiduciary duty to each other to defend and protect each other's military servicemen against
Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC,
Defendant Taliban and Defendant Al Qaeda.

109. Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, and Defendant
Afghanistan breached that duty of care when they negligently conceived of, authorized
and ordered Plaintiffs' decedents into battle without adequate thought, pre-planning,
equipment, air cover, pre-assault fire, uncompromised Afghan commandoes and other
means for self-defense against the terrorist acts of Defendant Iran, Defendant
Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Taliban and Defendant
Al Qaeda.

110. The deaths of Navy SEAL Team VI and other special operations servicemen were
directly and proximately caused by the negligent actions of Defendant Karzai, Defendant
OCG, Defendant ASOU, Defendant ANSF, and Defendant Afghanistan.

111. By reason of the wrongful conduct of the Defendant Karzai, Defendant OCG, Defendant
ASOU, Defendant ANSF, and Defendant Afghanistan, each and every one of them,
jointly and severally, Plaintiffs, on behalf of themselves and their sons, Plaintiffs'
decedents, suffered conscious pain, suffering and death, and have suffered pecuniary and
economic damage, loss of support, loss of nurture, care and guidance, grief, anguish, loss
of services, loss of society, and other mental and physical injuries.

112. Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, demand that
judgment be entered against Defendant Iran, Defendant Ahmadinejad, Defendant

Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, and Defendant Afghanistan, Defendant Taliban and Defendant Al Qaeda, jointly and severally, including an award of compensatory and actual damages, punitive damages, reasonable attorneys fees, pre-judgment interest, post-interest, costs, an award in excess of $200,000,000.00, and such other relief as the Court may deem just and proper.

## TENTH CLAIM FOR RELIEF

### (Gross Negligence – Defendants Karzai, OCG, ASOU, ANSF, Afghanistan)

113.  Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, repeat and reallege all of the previous allegations in paragraphs 1 through 112 of this Complaint with the same force and affect, as if fully set forth herein again at length.

114.  Defendant Karzai's, Defendant OCG's, Defendant ASOU's, Defendant ANSF's, and Defendant Afghanistan's actions not only fall below the standard of care of a reasonable person in the same or similar circumstances, but also are reckless.

115. Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, and Defendant Afghanistan had a duty to the U.S. servicemen who they are supposedly working with as partners. Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, and Defendant Afghanistan breached that duty they recklessly conceived of, authorized and ordered Plaintiffs' decedents into battle without adequate thought, pre-planning, equipment, air cover, pre-assault fire, uncompromised Afghan commandoes and other means for self-defense against the terrorist acts of Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Taliban and Defendant Al Qaeda.

45

116. The deaths of Navy SEAL Team VI and other special operations servicemen were directly and proximately caused by the reckless actions of Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, and Defendant Afghanistan.

117. By reason of the wrongful conduct of Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, and Defendant Afghanistan, each and every one of them, jointly and severally, Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, suffered conscious pain, suffering, severe emotional distress and death, and have suffered pecuniary and economic damage, loss of support, loss of nurture, care and guidance, grief, anguish, loss of services, loss of society, and other mental and physical injuries.

118. Plaintiffs demand that judgment be entered against Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban and Defendant Al Qaeda, each and every one of them, jointly and severally, including an award of compensatory and actual damages, punitive damages, reasonable attorneys fees, pre-judgment interest, post-interest, costs, an award in excess of $200,000,000.00 and such other relief as the Court may deem just and proper.

**<u>PRAYER FOR RELIEF</u>**

Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, demand judgment be entered against Defendant Iran, Defendant Ahmadinejad, Defendant Khamenei, Defendant IRGC, Defendant Karzai, Defendant OCG, Defendant ASOU, Defendant ANSF, Defendant Afghanistan, Defendant Taliban, and Defendant Al Qaeda, each and every one of them, jointly and severally, for compensatory and actual damages because of their demonstrable physical and

emotional injury to Plaintiffs and Plaintiffs' decedents, punitive damages because of Defendants callous and reckless indifference and malicious acts, and attorneys fees, costs, an award in excess of $200,000,000.00 or $600,000,000.00 in treble damages where appropriate, and such other relief the Court may deem just and proper.

## JURY DEMAND

**Plaintiffs, on behalf of themselves and their sons, Plaintiffs decedents, respectfully demand a jury trial on all issues so triable.**


Dated: July 8, 2015


                                        Respectfully submitted,

                                        */s/ Larry Klayman*
                                        Larry Klayman, Esq.
                                        Washington, D.C. Bar No. 334581
                                        Freedom Watch, Inc.
                                        2020 Pennsylvania Avenue N.W.
                                        Suite 345
                                        Washington, D.C. 20006
                                        (310) 595-0800
                                        leklayman@gmail.com



                                        Attorney for Plaintiffs, on behalf of
                                        themselves and Plaintiffs' decedents.